THE LAMOILLE VALLEY RAILROAD COMPANY *v.* THE
SELECTMEN AND TREASURER OF THE TOWN
OF FAIRFIELD.

*Town Aid to Railroads. Requirements of Enabling Act.
Condition. Record. Burden of Proof.*

Express authority is required, to enable a town to subscribe for stock in, and issue its
bonds to, a railroad corporation in aid thereof ; and all the precedent requirements
of the statute conferring the authority must be observed. Thus : on petition for
mandamus to compel the execution and issue of town bonds for such purpose, it
appeared that the town of which the petitionees were selectmen and treasurer was
by special statute authorized to aid in the construction of petitioner's railroad by
subscribing for stock thereof. The statute provided that the subscription might be
made when the assent thereto of a certain majority of the tax-payers of the town
had been obtained by an "instrument of assent" setting forth the substance of the
subscription and the conditions on which it should be made, and signed and ac-
knowledged by each person so assenting ; that such instrument should name three
commissioners to make the subscription in the name of the town, who, when the
instrument should have been signed and acknowledged by the requisite majority,
should append thereto a certificate stating that it had been so signed, &c., and cause
such instrument and certificate to be filed and recorded in the town clerk's office,
and a copy thereof, certified by the town clerk, to be lodged and recorded in the
county clerk's office; and that until such records should be made, such commission-
ers should not proceed to make any subscription on behalf of the town. *Held,* that
the commissioners had no authority to make the subscription without first causing
such instrument and certificate to be both filed *and recorded* according to the re-
quirements of the statute ; and that filing alone would not, as in the case of deeds,
have the same effect as recording.

*Held,* also, that the burden was on the petitioner to show that the requirements of
the statute had been complied with.

The petition was brought for the benefit of a company to which the petitioner had
assigned its claim as security for a debt. *Held,* that as the claim was not negotiable,
even in form, the assignee was not entitled to the protection given to a *bona fide*
holder of negotiable paper, and that, as the want of power in the commissioners to
make the subscription was open to inquiry between the original parties, it was, also,
between such assignee and the petitionees.

PETITION FOR MANDAMUS to compel the petitionees to make and
issue to the petitioner bonds of the town of Fairfield to the
amount of $40,000, in payment for stock to that amount in the
petitionee's railroad, subscribed for by the commissioners of said
town, in pursuance of an act of the Legislature, approved Novem-

33

ber 12, 1867, to enable said town, among others, to make such subscription in aid of the construction of said road.

The act provided that the subscription might be made when the assent thereto in writing of a majority of the persons paying taxes, both in number and amount of grand list then in force, had been first obtained by an instrument of assent, setting forth the substance of the subscription and the conditions on which it should be made, and signed and acknowledged by each person so assenting. The act further provided, as far as material to the points considered, as follows:

SEC. 3. Every instrument of assent shall name three persons . . . who shall be commissioners to make and execute in the name of and in behalf of such town . . . the subscription . . . therein mentioned, and when said commissioners shall have made and executed such subscription . . . in pursuance of the tenor of such assent and the provisions of this act, the same shall be binding . . . . .

SEC. 6. Any of said towns is hereby authorized . . . to make and issue negotiable bonds . . . for the purpose of carrying out the . . . subscription . . . as before provided in this act. Said bonds . . . shall be signed by the selectmen, and countersigned by the treasurer issuing the same . . . . . . . .

SEC. 8. When any instrument of assent herein provided for shall have been signed and acknowledged by the majority, in the manner hereinbefore required, the commissioners named in such instrument shall append thereto a certificate, by them subscribed and sworn to, stating that such assent has been signed and acknowledged by such majority as is required by this act, and shall cause such instrument of assent and such certificate to be filed and recorded in the town clerk's office of such town, and shall also cause a copy of such instrument and certificate, certified by the town clerk of such town, to be lodged and recorded in the county clerk's office in the county in which such town is situated; and until said records are made, such commissioners shall not proceed to make any . . . subscription . . . on behalf of said town.

The petition set forth the provisions of the act in question, and proceedings thereunder whereby said town was bound to issue its bonds, alleging, among other things, that the commissioners caused the instrument of assent with their certificate of assent thereon to be duly recorded in the town clerk's office in said Fairfield, and a true copy thereof, certified by the clerk of said

Fairfield, to be lodged and recorded in the county clerk's office in the county of Franklin, in full and exact compliance with said act, before they made the subscription in question. The answer denied that allegation. Testimony was taken on the question so made, and certified copies of the instrument of assent, &c., and of the copy thereof, with the certificates of record thereon, were duly exhibited. It appeared that before the petition was brought the claim of the petitioner against the town on its subscription was assigned to the Portland Rolling Mills, and that the petition was brought for its benefit. There was evidence tending to show that the Portland Rolling Mills, before taking the assignment, examined the records and inquired of the town clerk to ascertain whether all the requirements of the enabling act had been complied with, that nothing was discovered that raised any question as to the validity of the claim assigned, and that the assignee took the assignment for value, relying upon the validity of the claim. Testimony was taken on other points, but is not necessary to be stated.

*L. P. Poland* and *H. A. Burt*, for the petitioner.

The petitionees are estopped from claiming that the commissioners exceeded their authority, and from proving any defects in the recording that were not shown by the records, or ascertained by inquiry of the clerk. ' *Coloman* v. *Eave*, 92 U. S. 484 ; *Venice* v. *Murdock*, 92 U. S. 494 ; *Marcy* v. *Oswego*, 92 U. S. 637 ; *Humboldt* v. *Long*, 92 U. S. 642 ; *Mercer County* v. *Hackett*, 1 Wal. 83 ; *Van Hastrop* v. *Madison*, 1 Wal. 291 ; *St. Joseph* v. *Rogers*, 16 Wal. 644 ; *Bissell* v. *Jeffersonville*, 24 How. 287 ; *Commissioners of Knox Co.* v. *Aspinwall*, 21 How. 539 ; *Garret* v. *Van Horn*, 7 Ohio, 327.

The assignee stands on the same footing as a *bona fide* holder of bonds already issued. The fact of the negotiability of the bonds can make no difference. The protection that commercial usage throws around negotiable paper cannot be used to establish the authority by which it was originally issued. *Floyd Acceptance Cases*, 7 Wal. 666 ; *Marsh* v. *Fulton Co.* 10 Wal. 676.

It does not appear that the records were not duly made before the subscription was.

But if it does, the doctrine that has always been applied to the recording of deeds, should be applied here. The record should date from lodgment for record. We ask that the decision on this point in *Essex Coyunt Railroad Co.* v. *Lunenburgh*, 49 Vt. 143, be reviewed.

*Asahel Peck*, *H. R. Start*, and *G. W. Burleson*, for the petitionees.

The enabling act required that the instrument of assent, &c., and the certified copy thereof, should be actually recorded before subscription should be made. Any subscription made before such records would be void. *Essex County Railroad Co.* v. *Lunenburgh*, 49 Vt. 143. The burden is on the petitioner to show that that requirement of the statute was complied with. *Pawlet* v. *Sandgate*, 17 Vt. 619.

The proof shows that the records were not duly made.

The opinion of the court was delivered by

ROYCE, J. The petition in this case asks that a peremptory writ of mandamus may be issued by this court, directed to the defendants as selectmen and treasurer of the town of Fairfield, commanding them, as such selectmen and treasurer, to issue the bonds or notes of said town for the amount of $40,000, and deliver them to the relator. It is not necessary to notice any of the allegations in the petition upon which the relator predicates his right to the writ, except the one in which he alleges that the instrument of assent which was required by the enabling act approved November 12, 1867, was duly recorded in the town clerk's office of the town of Fairfield, and in the county clerk's office in the county of Franklin, in full and exact compliance with said act. The defendants in their answer deny the truth of that allegation ; and upon the issue thus made, the question arises as to whether it is the duty of the relator to establish that allegation in order to entitle himself to the writ.

The Act of 1867, before referred to, provides that when the instrument of assent therein required shall have been signed and acknowledged, and the certificate of the commissioners appended thereto, said commissioners shall cause such instrument of assent and such certificate to be filed and recorded in the town clerk's office of such town, and shall also cause a copy of such instrument and certificate, certified by the town clerk of such town, to be lodged and recorded in the county clerk's office in the county in which such town is situated; and until such records are made, such commissioners shall not proceed to make any contract, subscription, or purchase on behalf of said town. A construction was given by this court to that portion of the act of 1867 above recited, in the case of *The Essex County Railroad Company* v. *The Selectmen and Treasurer of Lunenburgh*, 49 Vt. 143, and it was then held that the provision requiring the records to be made was mandatory; that it was not sufficient to put the instrument of assent and certificate on file, but that they must be filed *and recorded*, and that without such records the commissioners had no power to make the contract. Ordinarily we should treat the question as *res adjudicata*, and feel content to stand upon the reasons that were given by the Chief Justice in that case; but in consideration of the amount involved, and the request made by the learned counsel for the relator that we should review the decision made in that case, we have examined the authorities to which we were referred on the argument, and such others as we could get access to, and are confirmed in the belief that the construction given in that case was the only one that could be justified upon principle and authority.

There is no ambiguity in the language used in the act; the legislative will is clearly and sharply defined, and there is no occasion to add to or qualify by judicial construction the plain and unequivocal language employed. *Newell* v. *The People*, 7 N. Y. 99; *McCluchy* v. *Cromwell*, 11 N. Y. 593. And when the provision of the statute is the essence of the thing required to be done, and by which the right to do it is obtained, it is mandatory. *Marshall* v. *Langworthy*, 6 Hill, 646; *Striker* v. *Kelly*, 7 Hill, 9.

The right of the town to subscribe for stock of The Lamoille

Valley Railroad Company, and issue its obligations in payment for the same, was derived from the act of 1867 ; and it was the undoubted right of the Legislature to impose such conditions upon the exercise of that right as it thought proper. The recording of the instrument of assent and certificate of the commissioners in the town and the county clerk's offices, was by that act made a condition precedent to the right of the commissioners to enter into any contract in the name of the town with the railroad company ; and it was incumbent on the relator to show that that condition had been complied with before he could insist that the town was under obligation to subscribe for the stock and issue its obligations to pay for the same. The compliance with that condition was by the act made necessary to the right ; and, until complied with, the commissioners had no power to bind the town by any subscription for stock that they might make. A want of power, as between a town and a corporation that the town has voted to aid, has always been allowed as a defence in the Federal and the State courts, when the corporation has endeavored to enforce the giving of such aid. *East Oakland* v. *Skinner*, 94 U. S. 255 ; *Ryan* v. *Lynch*, 68 Ill. 160 ; *Delaware County* v. *McClintock*, 51 Ind. 325 ; *Barnes* v. *Lacon*, 84 Ill. 461 ; Jones Railroad Securities, s. 230. Express authority is required, to enable a town to subscribe for stock in, and issue its securities to, a railroad corporation, and all the requirements of the law conferring the authority must be observed. Jones Railroad Securities, s. 226, and cases cited.

It is claimed that the condition was complied with by *filing* the instrument of assent and certificate with the town clerk and a certified copy of the same with the county clerk before the subscription was made, and that the actual recording of the same has relation to the time of filing. This claim is based upon an assumed analogy between this statute and the statute requiring deeds to be recorded, and the decisions of this court that where a deed is spread upon the record, the record has relation to the time it was filed for record. *Jarvis* v. *Aikens*, 25 Vt. 635. But that and all of the other cases where such an effect has been given to the act of filing, have been cases where it has been held that the ob-

ject in making a record as applicable to the case on trial, was, to give notice of the fact. In *Ferris* v. *Smith*, 24 Vt. 27, it is said that there is a distinction between those cases where the record is made essential in working a transmission of title or in creating or defeating a right, and those where it is required for the purpose of public notice ; that in the levy of an execution upon real estate, nothing is effectually accomplished until the necessary records are completed, and hence that comes within the former class. The same distinction was observed in *Bigelow* v. *Topliff*, 25 Vt. 273. In the case of a deed, the title vests upon its execution and delivery ; as between the parties to it nothing remains to be done, to give to it binding force and validity, and the only object of the record is to give notice of the fact. In this case the contract between the town and the railroad company was not completed and binding upon the parties until the records required were actually made. The records were essential to the creation of the right. This is apparent from the language of the act, which prohibits the commissioners from making any contract or subscription until such records are made ; and the court would be no more justified in holding that this duty could be disregarded than that any of the other matters and things required by the act could be dispensed with.

This brings us to the consideration of the question whether the records were in fact made before the subscription was made by the commissioners. We have carefully examined and weighed all the evidence submitted to us bearing upon that question, giving to the certificates of the town and the county clerks all the weight that such certificates are by the rules of evidence entitled to, and the result is that we find that the records were not completed until some time after the subscription was made.

It is further claimed by the relator that inasmuch as it appears that the claim of the railroad company against the town had been assigned to the Portland Rolling Mills before the bringing of this petition, and that this petition is being prosecuted for their benefit, the Portland Rolling Mills, as assignee, stands upon the same footing as a *bona fide* holder of the bonds of the town would stand if bonds had been issued. The question which has been considered,

of the want of the requisite records, goes to the power of the commissioners to make the subscription, and it has been uniformly held that the want of power in a municipal corporation to issue bonds is open to inquiry between the original parties. Jones Railroad Securities, ss. 230, 267, 287, 288. In *Kennicott* v. *Supervisors*, 16 Wal. 452, it is said by HUNT, J., that if there be lawful authority for the municipality to issue its bonds, the omission of formalities and ceremonies, or the existence of fraud on the part of the agents of the municipality issuing the bonds, cannot be urged against a *bona fide* holder seeking to enforce them. There must, however, be an original authority to the municipality to issue bonds.

It is provided by section 3 of the act of 1867, that when the commissioners shall have made and executed such subscription, purchase, or contract, in pursuance of the tenor of such assent and the provisions of this act, the same shall be binding on such town. The bonds, when issued, were to be signed by the selectmen and countersigned by the treasurer, and the duty to issue them was dependent upon the existence of a contract, or subscription, that was binding upon the town. Hence, it is the duty of the relator, if he would enforce that obligation, to show such a contract. It is not necessary to decide whether a *bona fide* purchaser of the bonds of the town, if bonds had been issued, would be affected by the want of power to make the subscription, for the Portland Rolling Mills, in our judgment, do not occupy any such relation to the town. They are equitable assignee of the claim, and their claim, as such assignee, is subject to be defeated by any defenses that might be made to it if prosecuted by and for the benefit of the assignor. The claim, when assigned to the Portland Rolling Mills, was not negotiable, even in form, and hence they are not entitled to the benefit of the rules of law which are invoked for the protection of the *bona fide* holder of negotiable paper

Several other questions were made by the petition, answer, and proofs, but as the objection already considered is decisive against the right of the relator to the writ, we have not deemed it important to consider them.

*The petition is dismissed, but without costs.*