GREENLEE, J.,
FOR THE COURT:
¶1. Thalmus Williams was convicted of fondling (Count II), attempted sexual battery by an authority figure (Count III), and sexual battery by an authority figure *411 (Count IV).[1] He was sentenced as a habitual offender to fifteen years for Count II, thirty years for Count III, and thirty years for Count IV. The thirty year sentences for Counts III and IV were to be served concurrent to each other but consecutively to the fifteen year sentence for Count II. He does not appeal the conviction or fifteen-year sentence for fondling. On appeal, Williams argues that the evidence was insufficient to support the conviction for attempted sexual battery by anal penetration (Count III). He also argues that the indictment on Count IV was impermis-sibly changed by the jury instructions to charge a separate crime, requiring reversal of the conviction on that count. We agree—and ■ the State essentially concedes—that the evidence was insufficient to support the conviction for attempted sexual battery under Count III. However we find that the discrepancy between Count IV and the jury instructions did not impermissibly amend the indictment and did not prejudice the defense. We therefore reverse and render on Count III, and affirm on Count IV.
FACTS AND PROCEEDINGS BELOW
¶2. The victim, V.W.,[2] is Williams’s biological daughter and was ten years old at the time of the sexual contact. The incident occurred at the home of Williams’s mother, Shirley Austin, where V.W. frequently visited. V.W. told her sister, K.W., about the inappropriate contact, who told their mother, who reported it to the police. The investigating officer arranged for a forensic interview at Family Crisis Services in Oxford, Mississippi, which was conducted by Meredith Rawl. V.W. did not receive a medical examination.
¶3. Prior to trial, the court conducted a “tender-years exception” hearing. See M.R.E. 803(25). The court found that V.W. had no reason to lie and understood lying was bad, that her statements were spontaneous, that she exhibited maturity, and that there was no evidence of improper or suggestive techniques being employed in her statement. As a result, the court permitted the hearsay testimony of V.W.’s sister and mother about what V.W. had told them. The forensic interviewer, Rawl, was also permitted to testify concerning V.W.’s statements to her. Rawl was accepted as an expert.
¶4, V.W.’s sister, K.W., testified that V.W. told her on the phone: “She told me that her father had tried to rape her, and she said that he showed her his privacy and tongue-kissed her.” Rawl, the forensic interviewer, testified that, during the forensic interview, V.M. stated that her father showed her his penis and asked her to touch it, which she refused. Rawl further testified that
[V.W.] reported that her father kissed her—put his tongue in her mouth, and that her father put his hands on her vaginal area.... She reported that her father asked to lick her vaginal area and started trying to pull her pants down. She disclosed that he did lick her vaginal area. She reported that his hand rubbed on her vaginal area and inside her vagina—which she reported, “hurt.”
She stated that her vagina hurt and [her] father started rubbing on her buttocks. She said that, that felt moist.
¶5. Rawl’s expert opinion was that her findings were consistent with the conclusion that the child had been sexually abused. She stated:
*412 Based on the fact that she stated that her father showed her his penis. That his penis touched her buttocks. That he showed himself—touching his penis on her. Based on the fact he put his tongue in her mouth, and his tongue touched her vaginal area, as well as her buttocks. Based on that—based on the information that she was able to provide, my findings were consistent with that; that the child had been sexually abused.
¶6. The victim, V.W., who was thirteen at the time of the trial, testified that the sexual contact started after her father told her that he was going to braid her hair. She testified that he took her clothes off and that he put his mouth toward her private area. When asked “at any point, did his finger, or tongue, enter your body?” she replied “yes” and confirmed that the contact was “where you would pee out of.” She was asked to confirm whether the statements she had made to the forensic interviewer were accurate: “ ‘[I]t was hurting, and so he started rubbing on your [sic] butt’; is that correct? That, ‘it was moist’; is that what you told [the forensic interviewer]?” To which V.W. responded “yes.”
¶7. Williams’s defense was that no sexual contact occurred. He testified on his own behalf. His brother testified on his behalf, asserting that he had also been at their mother’s house that evening and that he did not see any inappropriate behavior. Williams’s mother, Austin, also testified that she did not see anything inappropriate happen.
¶8. The jury heard testimony that V.W. wrote a letter to her father stating: “Daddy I am sorry always have fellings like stuff happen I’m sorry for lying on you I know I know I was wrong for lying for you physical messing with me sorry very sorry.” V.W. testified that she wrote it “because my grandma said if I didn’t write it my mama and my daddy would go to jail and if I told anybody that I write it she wasn’t going to get me nothing for Christmas.” After V.W. wrote the letter, Austin took her to a notary to have it signed. The letter was admitted into evidence.
¶9. Austin was indicted on one count of tampering with a witness. That charge was severed prior to trial. The indictment charging Williams and Austin lists in the heading, before the paragraphs enumerating each count, the title and relevant section number of each charge:
ATTEMPT MCA Section 97-1-7
ATTEMPTED FONDLING MCA Section 97-5-23
FONDLING MCA Section 97-5-23
ATTEMPTED SEXUAL BATTERY BY AUTHORITY FIGURE MCA Section 97-3-95(2)
SEXUAL BATTERY BY AUTHORITY FIGURE MCA Section 97-3-95(2)
WITNESS TAMPERING MCA Section 97-9-115 (l)(b)
HABITUAL OFFENDER MCA Section 99-19-1983 [sic] & 99-19-1981[sic]
Count III of the indictment states in relevant part:
That THALMUS WILLIAMS .... did unlawfully, wilfully and feloniously, attempt to engage in sexual penetration with V.W., a female child under the age of eighteen (18) years old, by attempting to penetrate her anal area with his penis....
(Emphasis added).
¶10. Count IV of the indictment states in relevant part:
That Thalmus Williams .... did unlawfully, wilfully and feloniously, attempt to engage in sexual penetration with V.W., a female child under the age of eighteen (18) years, by inserting his tongue, *413 mouth and/or hand into the vaginal area. . ..
(Emphasis added).
¶11. On Count IV, the jury was instructed on the completed crime of sexual battery. The transcript reflects a discussion at the time the jury instructions were prepared for the court, acknowledging the removal of the attempt language from Count IV.
1112. Williams appeals his convictions and thirty-year concurrent sentences for attempted sexual battery and sexual battery. [3] He does not appeal the conviction or fifteen-year sentence for fondling.
DISCUSSION
I. The evidence was insufficient to sustain a verdict for attempted sexual battery by anal penetration.
¶13. Williams argues that the evidence presented was insufficient to sustain a verdict for attempted penetration of the anal area. The State concedes that the evidence against Williams for this charge is “tenuous” and that his argument on appeal “possibly” has merit. When evaluating the sufficiency of the evidence, “the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.” Bush v. State, 895 So.2d 836, 843 (¶ 16) (Miss. 2005).
¶14. Mississippi Code Annotated section 97-3-95(2) (Rev. 2014) provides that “[a] person is guilty of sexual battery if he or she engages in sexual penetration with a child under the age of eighteen (18) years if the person is in a position of trust or authority over the child including without limitation the child’s ... parent .... ” Mississippi Code Annotated section 97-1-7(1) (Rev. 2014) provides that a person who attempts to commit a crime but fails or is prevented “shall, where no other specific provision is made by law for the punishment of the attempt, be punished by imprisonment and fine for a period and for an amount not greater than is prescribed for the actual commission of the offense so attempted.”[4]
¶15. Anal penetration means penetration of the anal cavity or anal opening. Ringer v. State, 203 So,3d 794, 797 (¶ 9) (Miss. Ct. App. 2016). In Ringer, this Court recently found insufficient evidence to support the charge of sexual battery by anal penetration where the evidence indicated that the penis was placed between the victim’s butt cheeks but was ambiguous as to whether actual penetration of the anal opening occurred. Id. at (¶ 10).
¶16. Here, the evidence indicated that the victim’s buttocks were touched. While the forensic interviewer understood the touching to have occurred with Williams’s penis, the reported statements of V.W. are ambiguous as to whether the touching occurred with a hand or with a penis. The *414 forensic interviewer, Rawl, testified that V.W. told her that, after Williams touched the inside of her vagina with his hands, which hurt, her “father started rubbing on her buttocks. She said that, that felt moist.” That statement is the extent of the evidence presented to support attempted anal penetration. None of the testimony clearly refers to the anal opening or clearly indicates that the touching constituted penetration of the anal cavity. We agree with Williams that the evidence does not suggest attempted anal penetration to the extent that a reasonable juror could find it proven beyond a reasonable doubt. We therefore find it necessary to reverse and render Williams’s conviction as to Count III.
II. The jury instructions did not charge a separate offense from the indictment on Count IV.
¶17. Williams argues that Count IV of the indictment charged him with attempted sexual battery, not the complete crime of sexual battery, and that the jury instructions enumerating the elements of sexual battery amended the indictment to impermissibly charge a separate crime from that he was indicted for. The State argues that the indictment actually charged the completed act of sexual battery and that the “attempted to” language found in the indictment (but removed from the jury instructions) can be read as sur-plusage.[5]
¶18. Criminal defendants have a constitutional right to be informed of the nature and cause of the charges brought against them. U.S. Const, amends. IV & XIV; Miss. Const, art. 3, § 26. See also Lee v. State, 944 So.2d 35, 38 (¶ 7) (Miss. 2006). A challenge to the sufficiency of the indictment can be made for the first time on appeal. Williams v. State, 169 So.3d 932, 935 (¶ 8) (Miss. Ct. App. 2014). Substantive amendments to an indictment must be made by a grand jury. Eakes v. State, 665 So.2d 852,859 (Miss. 1995). An amendment is substantive if it either “materially alters facts which are the essence of the offense on the face of the indictment as it originally stood” or “materially alters a defense to the indictment as it originally stood so as to prejudice the defendant’s case.” Jamison v. State, 73 So.3d 567, 571 (¶ 11) (Miss. Ct. App. 2011) (quoting Spears v. State, 942 So.2d 772, 774 (¶6) (Miss. 2006)). Where a discrepancy exists between the indictment and the jury instructions, “[a]s long as the change does not ‘materially alter facts which are the essence of the offense on the face of the indictment as it originally stood or materially alter a defense to the indictment as it originally stood’ in a way that would prejudice the defendant’s case, then the amendment is permissible.” Graham v. State, 185 So.3d 992, 1002-03 (¶ 25) (Miss. 2016).
¶19. Mississippi defines sexual penetration to include “any penetration of the genital or anal openings of another person’s body by any part of a person’s body, and insertion of any object into the genital or anal openings of another person’s body.” Miss. Code Ann. § 97-3-97(a) (Rev. 2014). “Penetration is the very essence of the crime of sexual battery.” Jenkins v. State, 101 So.3d 161, 166 (¶14) (Miss. Ct. App. 2012).
¶20. Therefore, for the discrepancy between Williams’s indictment on Count IV *415 and the jury instruction on Count IV to not be substantial, the indictment as originally worded must have factually alleged the completed act of penetration. The heading of the indictment against Williams lists as one of the charges “SEXUAL BATTERY BY AUTHORITY FIGURE MCA Section 97-3-95(2).” See Hines v. State, 472 So.2d 386, 390 (Miss. 1985) (label at the top of indictment listing the charge as “SEXUAL BATTERY MCA 97-3-95(a)” was relevant to the court’s determination that the indictment sufficiently charged the crime). This followed the charge in the heading of “ATTEMPTED SEXUAL BATTERY BY AUTHORITY FIGURE MCA Section 97-3-95(2).” Count III asserted that Williams did “attempt to engage in sexual penetration ... by attempting to penetrate V.W’s anal area with his penis,” whereas Count IV asserted that Williams did “attempt to engage in sexual penetration with V.W., a female child under the age of eighteen (18) years, by inserting his tongue, mouth and/or hand into the vaginal area....”
¶21. We conclude that the language of Count IV factually alleges that penetration of the vaginal area occurred. Therefore, despite the apparent error of including the phrase “attempt to engage” earlier in the sentence, Williams was on notice that he was to defend against the completed act of penetration. This construction is consistent with the heading of the indictment listing the completed crime as the charge, as well as with the distinction between the language of Count III and Count IV. The language removed from the indictment for the purpose of the jury instructions can therefore be construed as surplusage and did not constitute a substantive amendment. The change did not alter the facts that were the essence of the offense.
¶22. While we acknowledge that defects to an indictment can certainly be raised for the first time on appeal, we note that, during the jury-selection process, the judge read each count out to the jury pool, describing for Count IV the elements of the completed crime of sexual battery without objection or allegations of surprise from the defense. The court announced:
Count 4; it’s alleged that Mr. Williams, a/k/a “Thumbstack,” in this County and State on[]or about the 19th of April 2013, within the Jurisdiction of this Court, did unlawfully, willfully, felo-niously, engage in the sexual penetration of V.W., a female child under the age of 18 by inserting his tongue, mouth or hand into the vaginal area, and that, said Thalmus Williams, a/k/a “Thumbstack,” held a position in trust or authority to-wit her father.
At trial, all parties appeared to proceed with the understanding that the indicted charge was the completed crime of sexual battery.
¶23. Further, the amendment did not materially change Williams’s defense. Eakes, 665 So.2d at 859 (¶ 18); Griffin v. State, 584 So.2d 1274, 1276 (Miss. 1991). Williams’s defense was that no attempted or actual sexual contact happened that evening at his mother’s house. This defense was equally available for both the charge of attempted sexual battery and the charge of completed sexual battery. See Graham, 185 So.3d at 1000 (¶ 22).
¶24. While the inclusion of the “attempt” language in Count IV of the indictment was a mistake, as can be seen by- the description of the charge in the heading of the indictment, attempt can be read as surplusage and does not render the indictment fatally defective. Williams has not demonstrated unfair surprise and no objection to the jury instruction covering the completed act was made at trial. This argument is therefore without merit.
*416 CONCLUSION
¶25. The State presented insufficient evidence to support Williams’s conviction for attempted sexual battery by penetration of the anal area. We therefore reverse and render on Count III. We find no error in Williams’s conviction and sentence for sexual battery by penetration of the vaginal area, and therefore affirm his conviction and thirty-year sentence on Count IV.
¶26. THE JUDGMENT OF THE CIRCUIT COURT OF COAHOMA COUNTY OF CONVICTION OF COUNT III, ATTEMPTED SEXUAL BATTERY BY AN AUTHORITY FIGURE, AND SENTENCE AS A HABITUAL OFFENDER OF THIRTY YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS WITHOUT ELIGIBILITY FOR PAROLE OR PROBATION, IS REVERSED AND RENDERED. THE JUDGMENT OF CONVICTION OF COUNT II, FONDLING, AND COUNT IV, SEXUAL BATTERY BY AN AUTHORITY FIGURE, AND SENTENCE OF FIFTEEN YEARS FOR COUNT II AND THIRTY YEARS FOR COUNT IV, WITH THE SENTENCES TO RUN CONSECUTIVELY IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS WITHOUT ELIGIBILITY FOR PAROLE OR PROBATION, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO COAHOMA COUNTY.
LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, ISHEE, CARLTON, FAIR, AND WILSON, JJ., CONCUR. WESTBROOKS, J., NOT PARTICIPATING.

. Count I, attempted fondling, was not presented to the jury.

. To protect the minor victim’s privacy, we have substituted initials for her name and her sibling's name.

. Under the general attempt statute, "where no other specific provision is made by law for the punishment of attempt, [the convicted person shall] be punished by imprisonment and fine for a period and for an amount not greater than is prescribed for the actual commission of the offense so attempted.” Miss. Code Ann. § 97-1-7 (Rev. 2014).

. Williams argues that the indicted charge of attempted sexual battery was deficient for lack of the "failure or prevention” element of the general attempt statute. Our courts have long held that “the failure to charge the third element of attempt does not make an indictment defective.” Spearman v. State, 58 So,3d 30, 36 (¶ 19) (Miss. Ct. App. 2011). "[U]sing the word ‘attempt’ puts a defendant on notice that the State will prove that the crime was not completed.” Neal v. State, 936 So.2d 463, 467 (¶ 13) (Miss. Ct. App. 2006).

. Attempt is not a statutory element of the crime of sexual battery. Therefore, the instant attempt language is not pennissible under the standard that “[w]here the principal offense by statute is defined to include an attempt, an indictment for the principal offense is in no way defective which employs the word ‘attempt’ ” McCullum v. State, 487 So.2d 1335, 1338 (Miss. 1986).